**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CASE NO.: 7:21-CR-9 (WLS-TQL-1) |
| | : | |
| RICARDO E GARCIA, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER

Before the Court is Defendant Ricardo E. Garcia's "Motion to Set Aside, Hold in Abeyance or Modify Restitution Payment Schedule Until Movant's Release Pursuant to § 3664(k)[.]" ("the Motion") (Doc. 75). For the foregoing reasons, that Motion is **DENIED**.

### I.  PROCEDURAL BACKGROUND

On April 26, 2022, Defendant pleaded guilty to two counts of Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). The Court sentenced Defendant on May 31, 2023. Based on an Offense Level of 28, and a Criminal History Category of I, Defendant's guideline sentencing range was 78 to 97 months. Despite this, the Court varied downwards, and imposed a 60 month sentence of imprisonment to be followed by a period of supervised release of 10 years. At Defendant's request, the Court recommended that he should be placed in a facility near his family.

During Defendant's sentencing hearing, the United States Probation Office ("USPO") informed the Court that there were potentially identifiable victims in the images Defendant possessed. As such, the Court was required to impose a restitution penalty, so that Defendant could compensate his victims the "full amount of [their] losses." 18 U.S.C. § 2259(a). To this end, the Court ordered USPO to notice Defendant's potentially identifiable victims of their right to present restitution claims to the Court.

The Court held a restitution hearing on October 31, 2023. USPO received impact statements on behalf of sixteen victims. (Doc. 72). The Government asked the Court to impose the statutory minimum amount of $3,000 for each identifiable victim, and Defendant

1

did not object. (*Id.* at 1). Defendant was therefore ordered to pay $48,000 of restitution, with payments to begin immediately. (*Id.* at 7).

Defendant submitted the instant Motion on February 29, 2024. The Government submitted a Response (Doc. 76) on February 29, 2024.

## II.   DEFENDANT'S MOTION

Defendant moves the Court under 18 U.S.C. § 3664(k) to "grant an Order holding in abeyance his restitution payments or in lieu of this, Order the payment of $25 quarterly, until such time as [he] is released." (Doc. 76 at 1–2). Section 3664(k), authorizes a sentencing court to adjust the payment schedule of a defendant's restitution in response to "a material change" in that defendant's circumstances that might affect his ability to pay restitution.[1] *Cani v. United States*, 331 F.3d 1210, 1215 (11th Cir. 2003). Defendant makes two arguments in support of his Motion; the Court will address each in turn.

Defendant first argues that his restitution payments are causing him "undue hardship[.]" (Doc. 75 at 2). Although Defendant makes representations about his financial condition in the Motion, the Court asked USPO to prepare a memorandum providing context to Defendant's assertions and evidence. The information USPO provided grants much needed context to the Motion, and plainly reveals that Defendant's protests of undue hardship are without merit.

Defendant currently resides at Federal Correctional Institution Coleman-Low in Florida. Per the Amended Judgment (Doc. 73), Defendant's restitution payment was to begin immediately, "at a rate of not less than $25 per quarter and pursuant to the bureau of prisons' financial responsibility program." It appears that Defendant's restitution payments began at this rate. However, in the past six months, Defendant has received **$1,745** from his family. With these funds, it appears that Defendant has been able to improve his standard of living in BOP custody substantially, buying a number of non-essential items. (*See* Doc. 75-1). Additionally, Defendant earns $105 per month as a cook. Unsurprisingly, the influx of cash from Defendant's family resulted in an increase in his restitution obligations under the Inmate

---

[1] Section 3664 contains notification requirements to the attorney general and Defendant's victims before a change in restitution can be issued. However, it makes no difference here as the Court will discuss below.

Financial Responsibility Plan ("IFRP"). As a result, Defendant is now obligated to pay an average of $90 per month.

Based on the Court's review of Defendant's Motion, its attached evidence, and USPO's memorandum, the Court finds that Defendant has demonstrated a material change in economic circumstances. *Cani*, 331 F.3d at 1215 ("[T]he MVRA enables the district court to modify a restitution order to reflect. . . . a bona fide change in the defendant's financial condition, either positive or negative." (emphasis removed)). However, that material change in Defendant's circumstances is for the better, not the worse. Although that change might authorize a modification in Defendant's restitution payment schedule, it would only justify an *increase* in Defendant's financial obligation to his victims. However, the Court declines to modify Defendant's restitution obligations at all. In the Amended judgement (Doc. 73) the Court set a minimum threshold for Defendant's repayments but entrusted the determination of that rate "to the bureau of prisons' financial responsibility program." (Doc. 73 at 9). The Court will not disturb the determination of that program, the administrators of which are best situated to make determinations about Defendant's ability to pay restitution while serving his sentence.

The Court is, frankly, stunned that Defendant would make such a request, particularly only 90 days after the Court imposed the restitution penalty for his serious offenses. The restitution order was imposed to compensate the victims for the harm his offenses caused them. When imposing the restitution order the Court reviewed each of the victim's impact statements, which revealed that Defendant's conduct caused irreparable and serious harm to children, whose childhood and adult lives have been forever altered by his crimes. While such harm may never be fully repaired, Defendant's restitution payments toward the victims may help alleviate their suffering and financial costs. As such, Defendant's attempt to evade payment to these victims, so that he can live a certain lifestyle while incarcerated, gives the impression that he has little remorse for his crimes and lacks any desire to make amends for their impact.

Next, Defendant argues that his restitution payments should be reduced so that he can accumulate a "nest egg" for his release. (Doc. 70 at 2). Defendant cites no authority for this position, and the Court can find none which supports modification of a restitution payment

3

schedule to allow Defendant to accumulate savings. Defendant submits that such a "nest egg" would reduce "the temptation to do wrong again." (Doc. 75 at 2). The Court fails to see the relevance of a lack of financial resources to Defendant's commission of sexual offenses, or the temptation to offend in the same way once again. Defendant must resist his "temptation" to commit sexual offenses regardless of his financial condition, or face more serious penalties for his conduct in the future. The Court is therefore similarly unpersuaded by Defendant's "nest egg" argument. Also, Defendant presents no argument suggesting that he is unable to meet his minimal personal financial needs because of his restitution obligations.

In sum, the Court rejects both of Defendant's arguments for modifying his restitution schedule. Defendant's Motion (Doc. 75) is, accordingly, **DENIED**.

**SO ORDERED**, this 23rd day of July 2024.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**